IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PETER SZANTO**, | Case No.    3:18-cv-951-SI |
| Appellant, | (Bankr. Ct. Case No. 16-33185-pcm7) |
| | (Adv. Pro. No. 16-3114-pcm) |
| v. | |
| **EVYE SZANTO**, *et al.*, | |
| Appellees. | |

| | |
|---|---|
| **PETER SZANTO**, | Case No.    3:18-cv-952-SI |
| Appellant, | (Bankr. Ct. Case No. 16-33185-pcm7) |
| | (Adv. Pro. No. 16-3114-pcm) |
| v. | |
| **EVYE SZANTO**, *et al.*, | **OPINION AND ORDER** |
| Appellees. | |

Peter Szanto, 11 Shore Pine, Newport Beach, CA 92657. Appellant *Pro Se*.

Nicholas J. Henderson, MOTSCHENBACHER & BLATTNER LLP, 117 SW Taylor Street, Suite 300 Portland, Oregon 97204. Of Attorneys for Appellees Evye Szanto, Victor Szanto, Nicole Szanto, Kimberley Szanto, Mariette Szanto, Anthony Szanto, Austin Bell, John Barlow, and Barbara Szanto Alexander.

**Michael H. Simon, District Judge.**

These two cases come to the District Court as appeals from the order and judgment

issued by the U.S. Bankruptcy Court for the District Oregon on the parties' cross-motions for

summary judgment in an adversary proceeding involving Appellant Peter Szanto (Appellant) and

PAGE 1 – OPINION AND ORDER

Appellees Evye Szanto, Victor Szanto, Nicole Szanto, Kimberley Szanto, Mariette Szanto, Anthony Szanto, Austin Bell, John Barlow, and Barbara Szanto Alexander (Appellees).[1] Any other orders or rulings of the Bankruptcy Court mentioned in Appellant's briefs are not part of the Notice of Appeal and the Court does not address them in this Opinion and Order. For the reasons below, the Court holds that the Bankruptcy Court did not err in deciding the cross-motions for summary judgment and affirms the decision below.

### STANDARDS

A district court reviews a bankruptcy court's "findings of fact for clear error and conclusions of law and of mixed questions of law and fact *de novo*." *In re Icenhower*, 757 F.3d 1044, 1049 (9th Cir. 2014). "Whether the bankruptcy court properly granted summary judgment . . . presents a question of law that this Court reviews *de novo*." *In re Lane*, 959 F.3d 1226, 1229 (9th Cir. 2020). "Leave to amend a complaint is generally within the discretion of the bankruptcy court and is reviewed under the abuse of discretion standard." *In re Magno*, 216 B.R. 34, 37-38 (B.A.P. 9th Cir. 1997). "A court abuses its discretion when it fails to identify and apply the correct legal rule to the relief requested, or if its application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (simplified); *see also In re Taylor*, 599 F.3d 880, 887-88 (9th Cir. 2010) ("If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences

---

[1] Because Appellant and Appellees are family members and most have the same last name, to avoid confusion, the Court generally will refer to them as Appellant and Appellees instead of by name, except when discussing an individual Appellee.

that may be drawn from the facts in the record, then the bankruptcy court has abused its

discretion.").

## PROCEDURAL BACKGROUND

On August 16, 2016, Appellant filed a voluntary petition under Chapter 11 of the U.S.

Bankruptcy Code. This started Bankruptcy Case No. 16-bk-33185-pcm11 (the Main Bankruptcy

Case). The Bankruptcy Court later converted that case, over Appellant's objection, to a

proceeding under Chapter 7 (changing the case number to 16-bk-33185-pcm7). On

September 21, 2016, Appellant filed a complaint against Appellees, beginning Case No. 16-ap-

3114 (the Adversary Proceeding), the case that is the subject of these appeals.

Appellees filed an *ex parte* motion for extension of time to respond to the complaint filed

in the adversary proceeding. The Bankruptcy Court granted that motion. Appellees filed a

motion to dismiss with supporting documentation in response to the complaint, which the

Bankruptcy Court treated as a motion for summary judgment. In response, Appellant filed an

Amended Complaint. Appellees responded first with another motion to dismiss, and later with an

answer and counterclaims.

The parties engaged in discovery and litigated several motions in the Adversary

Proceeding, including motions to strike, motions to dismiss, and discovery motions. On

August 15, 2017, Appellant filed a motion for partial summary judgment against Appellees'

counterclaim for wrongful initiation of civil proceedings. On August 25, 2017, Appellees filed a

motion for partial summary judgment, moving defensively against all of Appellant's claims and

offensively in favor of their counterclaim for wrongful initiation of civil proceedings. On

May 17, 2018, the Bankruptcy Court denied Appellant's motion for summary judgment on

Appellees' counterclaim, granted Appellees' motion for summary judgment on Appellant's

claims, and denied Appellees' motion for summary judgment on their counterclaim. In ruling on

these motions, the Bankruptcy Court also denied Appellant's request to amend his complaint to add a new claim. This left Appellees' counterclaims for trial. The Bankruptcy Court entered Judgment on the dismissed claims under Rule 54(b) of the Federal Rules of Civil Procedure. Appellant appealed these decisions.

## DISCUSSION

Appellant filed three opening briefs that are somewhat difficult to follow and do not contain a comprehensible structure or organization articulating Appellant's arguments on appeal.[2] The Court did its best to decipher Appellant's arguments and addresses only the arguments relevant to these appeals.

Appellant mainly argues that the Bankruptcy Court erred due to the bias of the Bankruptcy Judge. Appellant also argues that the Bankruptcy Court erred in concluding that: (1) Appellant's claims arising from alleged conversion were barred by the statute of limitations; (2) Appellant did not meet his burden to show an issue of fact on his Racketeer Influenced and Corrupt Organizations Act (RICO) claim; (3) Appellant provided no evidence supporting his identity theft and related conspiracy and tax claims; (4) Appellant failed to show a material issue of fact on his claim for breach of fiduciary duty; and (5) Appellant should not be granted leave to amend to add a new claim.[3] Appellant also argues that the Bankruptcy Court should have *sua sponte* awarded Appellant emotional distress damages.

---

[2] Appellees point out that Appellant failed to follow the Rules of Bankruptcy Procedure in his opening briefs, and argue that this failure requires that the Court "view Appellant's briefing with a skeptical eye." Because this comment by Appellees does not request any specific remedy by the Court for Appellant's briefing deficiency, the Court does not further address Appellees' comment in this Opinion and Order.

[3] Appellant also raises arguments about withdrawing the reference to the Bankruptcy Court. The Court has already denied Appellant's motion to withdraw the reference, motion for reconsideration of that denial, and second motion to withdraw the reference. *See Szanto v. Szanto*, Case No. 3:18-mc-438-SI, ECF 42 (Opinion and Order dated May 1, 2019), 51 (Order

**A. Judicial Bias**

Appellant argues, with much use of capitalization, bolding, and underlining, that the Bankruptcy Court Judge exhibited bias against and "hatred" toward Appellant that caused adverse rulings on every motion filed by or against Appellant. This Court, however, has already addressed Appellant's claims of judicial bias by the Bankruptcy Judge. *See Szanto v. Szanto*, 2019 WL 1932366, at *5, 8 (D. Or. May 1, 2019). Under the doctrine of issue preclusion, Appellant is estopped from raising the same argument here.

Issue preclusion, also known as collateral estoppel, "is designed to 'bar [ ] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.'" *Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)); *see also Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) ("The doctrine of issue preclusion prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding. . . . The issue must have been actually decided after a full and fair opportunity for litigation." (quotation marks and citations omitted) ). Thus, the party asserting issue preclusion must show: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessarily decided, also described as necessary or essential to the judgment. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017).

---

dated August 26, 2019), and 58 (Order dated January 23, 2020). The Court declines to consider any additional arguments relating to withdrawing the reference, because Appellant already litigated that issue, the Court already decided it, and the issue is not properly before the Court in this appeal.

The Court previously held that Appellant's "assertions are insufficient to show bias or prejudice by the judge in the Bankruptcy Court." *Szanto*, 2019 WL 1932366, at *5. The issue of the Bankruptcy Judge's bias, therefore, was actually decided, after Appellant had a full and fair opportunity to litigate the issue, in the Court's determination not to grant's Appellant's motion to withdraw the reference. Thus, issue preclusion applies.

Even if issue preclusion did not apply, Appellant raises in this case the same arguments supporting the purported judicial bias that the Court previously rejected—adverse rulings by the Bankruptcy Court that Appellant contends are legally deficient, and the fact that the Bankruptcy Court Judge asked Appellant how to pronounce his last name at the first court hearing rather than perform independent research to figure out the pronunciation. The Court again finds that such conduct is insufficient to show judicial bias sufficient to warrant reversal. *See Liteky v. United States*, 510 U.S. 540, 550-51, 555-56 (1994).

## B. Statute of Limitations

The Bankruptcy Court granted summary judgment on Appellant's conversion claim and the part of Appellant's claim for intentional or negligent infliction of emotional distress arising from conversion, based on the statute of limitations. The Bankruptcy Court noted that for state law claims, there were choice of law issues between California and Oregon law. For Appellant's conversion claim, the Bankruptcy Court applied Oregon's six-year statute of limitations, noting that California had a shorter, three-year limitations period. For Appellant's intentional or negligent infliction of emotional distress claim, the Bankruptcy Court noted that both Oregon and California have a two-year statute of limitations.

Relevant to the statute of limitations issue is a California state case filed in San Mateo County (San Mateo Case) in 2006 by Paul Szanto and Appellee Victor Szanto (Trustees), the Trustees of the trust of Appellant's parents. Appellee Anthony Szanto later joined the case.

Appellant argues that the filing of the San Mateo Case tolls the statute of limitations on Appellant's claims in the Adversary Proceeding. The San Mateo Case began with the Trustees' petition for a court order confirming the transfer of real property into the trust. App'x 1 at 70. Appellant's parents had removed the real property from the trust shortly before the death of Appellant's mother, purportedly for refinancing purposes. The Trustees filed a motion with the San Mateo court to confirm the transfer of the property back into the trust to avoid going through probate to effectuate the transfer. Appellant moved for a declaratory judgment that he could dispute the transfer and such a dispute would not violate the "no contest" provision in his mother's will and in the trust. *In re Estate of Szanto*, 2008 WL 643803, at *4-5 (Cal. Ct. App. Mar. 11, 2008). The trial court denied Appellant's motion and granted the petition to transfer the real property into the trust. *Id.* at *4-6. The California Court of Appeals affirmed the denial of Appellant's motion. *Id.* at *5. The appellate court, however, reversed the grant of the petition, holding that the petition should have been denied. *Id.* at *7. After the decision by the Court of Appeals, Appellant filed an amended petition for declaratory relief in the San Mateo Case, and Anthony Szanto moved to have Appellant designated as a "vexatious litigant." App'x 1 at 92-93. The parties litigated various other petitions, discovery motions, motions to strike, and motions against the pleadings through July 24, 2015. *Id.* at 92-160. On that date, the San Mateo court removed all pending motions from its calendar after issuing an order stating in part that "there is no right to a forum as to an action which is no longer in controversy as to the affirmative relief requested. The discovery motions are moot." *Id.* at 153-160.

Appellant argues that the San Mateo Case was brought by the Trustees as a "conversion" case and that because of that fact, it necessarily tolls the statute of limitations on his claims in the Adversary Proceeding. Appellant also asserts that during the California proceedings, after he lost

in the trial court and filed an appeal, Appellees immediately "converted" Appellant's personal and real property by selling assets in violation of a stay that was automatically instituted by nature of Appellant filing his appeal. Appellant argues that this conversion caused him severe emotional distress and other harm.

The Bankruptcy Court found that Appellant knew about his conversion claims at least by June 5, 2009, when he filed a cross-complaint in a different California state court case in Orange County (Orange County Case). Appellant alleged in the Orange County Case a claim for conversion of the same property against many of the same persons against whom he alleges conversion in the Adversary Proceeding. Because June 2009 is more than six years before September 2016, the Bankruptcy Court found that the claim for conversion of personal property was time barred. The Bankruptcy Court rejected Appellant's argument that the statute of limitations was tolled by various statutes relating to the estate of a decedent or the personal representative of a trust, finding that they did not apply under the circumstances and given the parties. As for conversion of real property, the Bankruptcy Court determined that Appellant could not bring such a claim because, under either Oregon or California law, the tort of conversion did not encompass real property.

Later, in discussing Appellant's claim for emotional distress, which the Bankruptcy Court found partially stemmed from Appellees' alleged conversion of Appellant's personal property, the Bankruptcy Court noted Appellant's argument that the statute of limitations for that claim was tolled because of the San Mateo Case. The Bankruptcy Court stated that when a plaintiff sues, that suit tolls the statute of limitations only for compulsory counterclaims. The Bankruptcy Court concluded that Appellant "provides no evidence that his claims" in the Adversary Proceeding "were compulsory counterclaims" in the California action, or that Appellant "either

asserted them or is not yet required to assert them" in the California action. Appellant argues the Bankruptcy Court erred in concluding that the San Mateo Case did not toll the statute of limitations.

The Ninth Circuit has not yet decided whether or for what type of counterclaims the filing of a complaint tolls a statute of limitations.[4] There are many federal appellate decisions from other circuits supporting the conclusion that the filing of a complaint tolls the statute of limitations for compulsory counterclaims. *See, e.g.*, *Kirkpatrick v. Lenoir Cty. Bd. of Educ.*, 216 F.3d 380, 388 (4th Cir. 2000) ("In this circuit a compulsory counterclaim relates back to the time of the filing of the plaintiff's complaint. *See Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982) (holding that 'the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim')."); *Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 571 (7th Cir. 1989) ("There is authority that the filing of a claim tolls the statute of limitations on any compulsory counterclaim, by analogy to the 'relation back' language of Rule 15."); *Employers Ins. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed. Cir. 1985) ("The institution of a plaintiff's suit suspends the running of limitations on a compulsory counterclaim while the suit is pending."); *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1980) ("[A] majority of courts have held that where a plaintiff institutes an action in a timely manner, the running of the statute of limitation governing the compulsory counterclaim is tolled, provided the counterclaim was not time-barred at the commencement of the plaintiff's action."); *but see N. Cypress Med. Ctr. Operating Co. v. Cigna*

---

[4] In an unpublished decision, the Ninth Circuit concluded the district court erred in calculating the limitations period by looking to the date of the filing of the answer and counterclaims instead of the original complaint, but in that case the parties did not dispute the asserted error. *N. Cty. Commc'ns Corp. v. Sprint Commc'ns Co., L.P.*, 691 F. App'x 466, 468 (9th Cir. 2017).

*Healthcare*, 781 F.3d 182, 205-6 (5th Cir. 2015) (holding that compulsory counterclaims requesting affirmative relief do not toll the statute of limitations, while noting that counterclaims requesting defensive relief or recoupment do). As explained by a leading treatise, however, even when accepted as tolling the statute of limitations, it does not toll the statute of limitations indefinitely (Appellant argues the limitations period has been tolled since 2006).

> The courts have not clearly resolved the question whether plaintiff, by instituting an action, tolls or even waives the defense of the statute of limitations with regard to a compulsory counterclaim that is asserted after the applicable period has expired. If the statute is deemed tolled, defendant may interpose a counterclaim as long as the claim was timely when plaintiff brought suit. Thus, if plaintiff institutes an action one day before the applicable statute of limitations has run on defendant's counterclaim, then defendant, although not able to interpose the claim in the form of a counterclaim before the end of the limitations period, will be permitted to assert the claim, if it is compulsory, *within the time provided by Rule 12(a) for serving a responsive pleading*.

> * * *

> Although there is some conflict on the subject, the majority view appears to be that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.

6 C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.*, § 1419 (3d ed. 2004) (emphasis added).

The Court assumes without deciding that in the Ninth Circuit the filing of a complaint tolls the statute of limitations for compulsory counterclaims. *See MH Pillars Ltd. v. Realini*, 2018 WL 1184847, at *3-4 (N.D. Cal. Mar. 7, 2018) (concluding that "although the Ninth Circuit has not opined on the issue . . . the weight of authority [is] that the filing of a complaint tolls the statute of limitations for compulsory counterclaims, which relate back to the date the initial complaint was filed"). Even so, that does not mean that the statute of limitations would be tolled for all these years. Appellant fails to show that when he asserted his claims in the Adversary

Proceeding it was within the time permitted under Rule 12(a) for a responsive pleading in the San Mateo Case.

There are also standards for what makes a counterclaim compulsory. Rule 13(a) of the Federal Rules of Civil Procedure requires that a compulsory counterclaim must arise out of the same transaction or occurrence and not require adding a party over whom the court lacks jurisdiction. There are four tests that have been developed to analyze whether a counterclaim arises out of the same transaction or occurrence: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether claim preclusion (res judicata) would bar a subsequent suit on the defendant's claim without the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute the plaintiff's claim as well as the defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. 6 C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.*, § 1410 (3d ed. 2004); *see also Exergy Dev. Grp. of Idaho, LLC v. Fagen, Inc.*, 2017 WL 1097175, at *7 (D. Idaho Mar. 22, 2017).

Appellant focuses solely on the fact that the Trustees chose to file their own "conversion" claim. First, the Court does not agree that the petition to confirm the transfer of the real property into the trust alleges conversion as that term is commonly used and is used in Appellant's tort claim in the Adversary Proceeding. Second, even if the original petition in the San Mateo Case did allege a conversion claim, that does not mean that Appellant's claims in the Adversary Proceeding would have been compulsory counterclaims in the San Mateo Case. The problem with Appellant's tolling argument is that he does not provide evidence or even argument that his claims in the Adversary Proceeding satisfied the requirements for a compulsory counterclaim in the San Mateo Case. Indeed, based on Appellant's assertions on appeal, his claims for

PAGE 11 – OPINION AND ORDER

conversion and intentional or negligent infliction of emotional distress raised in the Adversary

Proceeding involve facts that arose after the trial court decided the San Mateo Case and

Appellant filed his California state appeal. Appellant argues that while the California appeal was

pending, Appellees converted Appellant's personal and real property. This means that Appellant

could not have raised these claims in the San Mateo Case in response to the original petition

because they had not yet accrued. Further, the original petition was denied on appeal and thus no

counterclaims were or would have been filed after the appeal. In any event, Appellant did not

provide evidence or argument that his claims in the Adversary Proceeding qualified as

compulsory counterclaims. The Court rejects Appellant's argument that the Bankruptcy Judge

erred on this ground.

   The Court also agrees with the Bankruptcy Judge's analysis on the other statutes cited by

Appellant as tolling the statute of limitations for conversion. As to the alleged real property

conversion, Appellant argues that the Bankruptcy Court erred in concluding that under California

law the tort of conversion does not apply to real property. Appellant quotes *Gherman v.*

*Colburn*, 72 Cal. App. 3d 544 (1977), arguing that under California law there can be a claim for

conversion of real property "in equity." Appellant misunderstands *Gherman*.

   *Gherman* involved a joint venture that was formed to purchase and resell real property.

*Id.* at 554. The court in *Gherman* was focused on the remedy for a joint venturer or partner

whose cohort had repudiated the joint venture and converted the assets of the joint venture. *See*

*id.* at 564-65 ("Where a partner or joint venturer wrongfully repudiates the partnership or joint

venture agreement and converts the assets of the partnership or joint venture to his own use and

benefit, the victim at least has alternative remedies: he may waive the tort or breach and sue to

specifically enforce the partnership or joint venture agreement, including the remedy of a judicial

dissolution and an accounting and if necessary (as an auxiliary remedy) to impress a trust on

partnership or joint venture property, or the victim may submit to the repudiation and sue for

damages for conversion of his interest in joint venture assets; or the victim may submit to the

repudiation and sue for damages for breach of the joint venture agreement (including 'profits

which might have been made') the same as any other action for damages for breach of any other

contract; or he may sue in tort." (citations omitted)).

The portion of the *Gherman* opinion quoted by Appellant discussed how the real property

was held by an entity "as nominee for the joint venture and therefore in trust, for the use and

benefit of the joint venture and when defendants repudiated that fiduciary obligation they thereby

became obligated to pay plaintiffs damages in the form of money," which constituted a

conversion in equity. *Id.* at 568 (footnote omitted). The court in *Gherman* continued, however,

explaining that partnership interest is treated as personalty even if its realty. *Id.* The court then

concluded:

> When defendants repudiated the existence of a joint venture,
> denied that plaintiffs had any equitable right or title in the 2,600
> acre parcel and claimed the entire parcel for defendants' exclusive
> benefit, defendants converted plaintiffs' equitable title in real
> property to personal property in the form of a right to a money
> judgment for damages and when defendants denied and repudiated
> their obligation to pay those damages, they, in effect, converted
> plaintiffs' personal property to their own use and benefit. Plaintiffs
> might have sued to impress a trust on the real property. Instead
> they elected to seek a money judgment. A conversion within the
> concept of equity, therefore, occurred. Under these circumstances,
> it is not true that the exception delineated in Corporations Code
> section 15038 may not be asserted where the joint venture assets
> consist of real property. It may well be true that the court did not
> spell out precisely these obtuse, equitable and legal theories in its
> instructions to the jury, but it is equally true that it was not
> requested to do so.

*Id.* at 568-69. These "obtuse, equitable and legal" theories involving joint ventures do not apply

to Appellant's claims. *Accord Jacot v. Miller*, 2017 WL 4320322, at \*4 (D. Guam Sept. 28,

2017) (citing *Gherman*, among other cases, and explaining that "in cases *featuring ventures* involving real property, the courts have generally explained that the 'real property acquired and dealt with' will take on the character of personal property, and more importantly, that the conversion claim in these scenarios is not one for conversion of the real property itself, but for 'the proceeds of the sale of properties' (emphasis added)). The Bankruptcy Court did not err in granting summary judgment on Appellant's real property conversion claim.

## C.  RICO Claim

Appellant argues that the Bankruptcy Court erred in granting summary judgment on Appellant's RICO claim. The Bankruptcy Court found that Appellant provided no evidence to support his RICO claim and offered only his "bare allegations" to support the claim. In a motion for summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986).

In analyzing this claim, the Bankruptcy Court discussed a discovery dispute between Victor Szanto and Appellant, the subject of an earlier motion to compel. This discovery issue was not specifically related to Appellant's RICO claim and Appellant did not argue this issue

specifically in response to the motion against his RICO claims, but the Bankruptcy Court

considered that it feasibly could have involved evidence related to Appellant's RICO claims. On

June 8, 2017, Victor Szanto testified at deposition that he had "boxes and boxes" of his parents'

documents that he had not yet looked through. On August 8, 2017, Victor Szanto signed a

declaration in response to the motion to compel stating that he had produced all "related"

documents. Appellant argued that Victor Szanto withheld "relevant" documents in those boxes

of documents. The Bankruptcy Court interpreted this argument to mean that Appellant was

arguing that he could have produced evidence to support his RICO claim if Victor Szanto would

have produced relevant documents from the boxes. The Bankruptcy Court determined that

Appellant did not provide any evidence that Victor Szanto's declaration was untruthful. The

Bankruptcy Court also concluded that regardless of the boxes, if Appellant's allegations were

true, then he should have *some* evidence to support his claims in his own possession or control.

The Bankruptcy Court did not accept Appellant's speculation that evidence supporting his claim

must exist in the possession of Victor Szanto and his purported refusal to produce that evidence

was sufficient to meet Appellant's burden to defend the motion for summary judgment. The

Court agrees.

## D.  Identity Theft and Related Claims

The Bankruptcy Court found that Appellant did not provide any evidence that Appellees

engaged in identity theft, other than speculation that they had motive and opportunity. The

Bankruptcy Court noted that although Appellant asserted that fraudulent accounts were opened

and transactions were performed in his name, he did not provide any specific information,

evidence, or documents to support that assertion. The Bankruptcy Court explained:

> [Appellant] did not allege or provide any evidence that specified
> what debts were incurred, what accounts were falsely opened, how
> those obligations were resolved, or any amounts he had to pay on

> loans or credit charges he did not initiate. For example, plaintiff
> did not produce any records of unauthorized bank account activity
> such as statements or signature cards, or correspondence from
> banks regarding any such issues. He also did not provide any
> evidence of credit accounts such as credit card statements,
> correspondence with credit card companies, account applications,
> or documents showing any negotiated resolutions of any false
> accounts. This is the type of evidence to which plaintiff should
> have ready access and should be readily available to plaintiff from
> his own records or by request to his financial institutions.

App'x 1 at 14-15.

Appellant argues that the Bankruptcy Court erred because circumstantial evidence of motive and opportunity is sufficient and Appellant could not possibly obtain information about accounts falsely acquired in his name. This argument is not persuasive. Persons who are the victim of identity theft can obtain information about the fraudulent accounts for many reasons, including to understand the scope of the problem, get law enforcement assistance, get legal assistance, dispute information with credit reporting agencies, and so forth. Additionally, even if Appellant could not or would not want to obtain details on specific purchases or account numbers, he could obtain general information about where accounts were opened, when, and for how much. Further, because the Adversary Proceeding was pending, he had litigation discovery tools at his disposal, such as subpoenas. The point of the Bankruptcy Court's opinion is that Appellant had the burden of showing some evidence to support his identity theft claim that had been pending for years, that evidence, if it existed, would have been available to him, and he did not provide any evidence to support his claim. Merely asserting motive and opportunity is insufficient to meet Appellant's burden of proof under the shifting burdens in a motion for summary judgment.

Appellant also cites to a single document from the IRS generally identifying that Appellant's tax return is delinquent and that he received 1099-C forms for cancellation of debt

from Chase Bank, Wells Fargo Bank, and DFS Services. App'x 1 at 205. He also cites one of the 1099-C forms, from Wells Fargo, showing the cancellation of $46,983.60 in debt. *Id.* at 206. Appellant asserts that he did not accrue the debt that was canceled and this is evidence of identity theft by Appellees, which created tax liability. The Bankruptcy Court noted that Appellant argued that he had requested more information from the IRS but the IRS did not provide it. The Bankruptcy Court found that, like with other information relating to Appellant's general identity theft claim, Appellant should have had or been able to obtain information on the alleged accounts even independent of the IRS. Indeed, the document from Wells Fargo is addressed to Appellant at his home address. The Bankruptcy Court found that for the same reasons that Appellant's general identity theft claim fails, his tax liability claim fails.

The Bankruptcy Court also concluded that Appellant failed to show that Appellees engaged in a conspiracy to steal Appellant's identity. The Bankruptcy Court explained that with limited, inapplicable exceptions, conspiracy is not an independent tort and it failed along with Appellant's identity theft claim. The Court has considered all of these identity-theft-related claims *de novo* and holds that the Bankruptcy Court did not err.

**E.  Breach of Fiduciary Duty**

The Bankruptcy Court held that Appellant failed to show that Appellees owed Appellant any fiduciary duty. Appellant argued Appellees owed him fiduciary duties because he was a beneficiary of a previous version of his parents' will and trust. The Bankruptcy Court, however, found that Appellant offered only a single telephone call supporting that contention. Thus, the Bankruptcy Court found that Appellant produced only a "scintilla of evidence" that Appellees owed Appellant fiduciary duties, which failed to meet Appellant's burden.

On appeal, Appellant does not argue that the older versions of the will and trust apply. Instead, he makes a general argument that Appellees owe fiduciary duties to the "trust" and to

the disputed real property, and thus to Appellant. It appears Appellant may also be arguing that Appellees owe fiduciary duties to Appellant as a co-trustee. Appellant did not raise these arguments before the Bankruptcy Court. The Court declines to consider these new arguments raised for the first time on appeal. *See Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 455 (9th Cir. 2016) ("Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so. The Court may exercise this discretion (1) to prevent a miscarriage of justice; (2) when a change in law raises a new issue while an appeal is pending; and (3) when the issue is purely one of law." (simplified)).

**F.  Leave to Amend**

Appellant argued in his motion for summary judgment that the Bankruptcy Court should void certain transactions by Appellees. Appellees responded that Appellant had not alleged a claim for avoidance of transfers. In his reply, Appellant sought leave to amend his complaint. The Bankruptcy Court denied Appellant's request for leave to amend as untimely and not in compliance with Rule 16 of the Federal Rules of Civil Procedure. The Bankruptcy Court found that Appellant provided no new information or facts that would justify adding a claim that stems from information Appellant had known since 2009. Appellant argues that the Bankruptcy Court erred in applying Rule 16 instead of freely giving Appellant leave to amend under Rule 15.

The Bankruptcy Court did not abuse its discretion. Summary judgment is not the time to amend pleadings. *See, e.g.*, *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (holding that when allegations are not in the complaint, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (quoting

*Fleming v. Lind–Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)); *Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*, 448 F. Supp. 3d 1127, 1131 (D. Or. 2020) ("Summary judgment is not the time to amend pleadings.").

Further, the Bankruptcy Court did not err in applying Rule 16. When a court has entered a case scheduling order, which the Bankruptcy Court did, and a party requests to amend a pleading after the expiration of the deadline set by the court, Rule 16(b) controls the party's request, not Rule 15(a). *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Thus, the party requesting an amendment must first show "good cause" under Rule 16(b) and then show that its proposed amendment is proper under Rule 15(a). *Johnson*, 975 F.2d at 608.

The Ninth Circuit has explained good cause under Rule 16(b) as follows:

> "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15." Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Id.* at 609 (citations omitted); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ("While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b) ] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end.'" (quoting

PAGE 19 – OPINION AND ORDER

*Johnson*, 975 F.2d at 609)). The Bankruptcy Court did not abuse its discretion in finding that Appellant failed to show good cause under Rule 16. The Bankruptcy Court's application of the legal standards was not "illogical", "implausible," or "without support in inferences that may be drawn from the facts in the record." *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 424.

### G.  Emotional Distress

Appellant's argument relating to his entitlement to emotional distress damages is unclear. Appellant alleged a claim for intentional or negligent emotional distress, against which the Bankruptcy Court granted summary judgment. Appellant argues on appeal, however, "the failure of the Bankruptcy court to grant [Appellant] *sua sponte* relief based on **Appellant's palpable, nearly-psychotic, emotional distress**—intentionally inflicted upon Appellant (and his family) by Appellees." ECF 49 at 1 (emphasis in original). This argument does not appear to challenge the Bankruptcy Court's grant of summary judgment on Appellant's claim for intentional or negligent infliction of emotional distress, but appeals the fact that the Bankruptcy Court did not *sua sponte* grant Appellant emotional distress damages on some other unknown basis.[5] Appellant asserts that the Bankruptcy Court awarded $510,000 to Appellees for emotional distress damages for unpled claims and thus must award Appellant emotional distress damages for unpled claims. Otherwise, argues Appellant, he received unfair and disparate treatment.

This portion of Appellant's appeal is frivolous and denied. The Bankruptcy Court dismissed all of Appellant's claims. There was no claim on which to award damages. Appellant

---

[5] If Appellant is disputing the Bankruptcy Court's grant of summary judgment against his claim for intentional or negligent emotional distress, for the same reasons the Court affirms the Bankruptcy Court's grant of summary judgment on Appellant's conversion and identity theft claims (which are the underlying grounds for Appellant's claim for intentional or negligent infliction of emotional distress), the Court affirms.

failed to meet his burden to show a genuine issue of material fact on any of his claims and there was thus no factual or legal basis on which the Bankruptcy Court could award emotional distress damages, *sua sponte* or otherwise. Appellees, on the other hand, had counterclaims remaining. Later in the litigation, they prevailed on their counterclaim for wrongful use of civil proceedings, and the Bankruptcy Court awarded them emotional distress damages on that claim. Therefore, Appellant and Appellees were not in a similar situation and were not treated disparately. Appellees prevailed on a claim, while all of Appellant's claims were dismissed.

Appellant argues that Appellees did not request "emotional distress damages" in their original counterclaim alleging wrongful use of civil proceedings but instead alleged that they are "entitled to an award of damages against Plaintiff, in an amount to be awarded at trial." Appellant asks the Court to strike the Bankruptcy Court's award of damages. The damages awarded to Appellees, however, are not a subject of this appeal. This appeal relates to the opinion on the motion for summary judgment. The Bankruptcy Court's damages award to Appellees was after a trial on the merits and was not part of the summary judgment opinion at issue in this appeal. Whatever the merits of Appellant's challenge to that damages award, Appellant fails to show that the Bankruptcy Court erred in failing to *sua sponte* award Appellant emotional distress damages.

## CONCLUSION

The decisions of the Bankruptcy Court are AFFIRMED.

**IT IS SO ORDERED**.

DATED this 18th day of December, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 21 – OPINION AND ORDER